You may be seated. The clerk will call the next case. Mr. Brokaw, you may proceed. May it please the Court. Good afternoon, Justices, Counsel. My name is Jason Brokaw. I am an attorney representing Whiteside County and also the Zoning Administrator's School Director. The Appellants Whiteside County and the Zoning Administrator request that this Court vacate the judgment entered against them, dissolve the injunction ordered by the Circuit Court, and reverse the trial court's order and enter judgment in favor of defendant. Before the Court today are essentially two issues. The first is whether the trial court order granting the ultimate relief sought in the preliminary injunction was proper given the procedural posture of the case. As the briefing is clear, the Moronde's have conceded in their brief that the trial court's order as to the ultimate relief in the permanent injunction was premature. Therefore, I won't belabor on that point very much, but I'd be happy to answer any questions. The remaining issue, however, is whether the matter must be dismissed. The County maintains that the matter should be dismissed because the complaint was both untimely and also improperly sought a declaration of non-liability for past conduct. Although the Court is aware of the facts in the briefing, a brief review of the relevant timeline will assist the Court in the understanding of the explanation of the County's arguments. From the County's perspective, this dispute began approximately April 21, 2014, when the Morondes applied for and were issued a temporary flood zone permit. Shortly thereafter, they began construction. Approximately June 23, 2014, Whiteside County issued a stop work order. This is after a lot of construction was already completed. By their own allegations, the Morondes stated that they had substantially constructed the building. And the County was aware of that? Factually? Well, they're aware that the permit, it's a very rural area, as I'm sure you're aware, so as to the actual extent of their knowledge of the extent of construction, I'm not sure what that is. However, I will note that on the face of the flood zone permit, it said, do not engage in these things. In fact, I believe there were four specific admonitions or warnings that this permit is only to allow the applicant to establish first floor elevation or permanent openings. A final permit will be issued and construction may resume. Construction without a final permit will result in a fine. And finally, in the affidavit that Mr. Morondes signed, in all caps, it said this is not a permit to finish construction. So there was very clear knowledge on the part of the Morondes that they should receive an additional or proper final permit before proceeding with construction beyond the scope of that temporary permit. It says it's to establish that the elevation is correct, right? And that is the contention of the County that the elevation is not correct. That is correct, that the elevation is... But the elevation in the permit was left blank, right? That's an accurate statement. So how would the person who receives this permit know what the elevation is? Well, in getting that permit, it allows them to go seek out an engineer who then is knowledgeable in that area. And they can go conduct a survey, establish the elevation certificate, and then that elevation certificate is to be sent back to the County. And at that time, the County will then assess whether or not it fits. And then the permit will be issued, the final permit will be issued. But this permit is to give them, right, to have the first floor constructed at a certain level. I don't understand, then, if the administrator, Mr. Richter, was present at the site, why that was all allowed to happen. Well, I think it's important to remember the procedural posture in this case. Because we're on motion for summary judgment, and that as we file a motion to dismiss, we have to accept as true all well-pleaded facts. Whether or not he is there, obviously it's not in the record. We haven't had, the County hasn't had an opportunity to answer and deny those. But those are certainly factual allegations that the County would probably rebut moving forward. As for when he was... I'm not sure if they're going to... Well, I would like to commit to the fact that you won't dismiss this today. But the County would rebut those allegations as to the extent of his presence and what exactly he was present for and said or did not say on the site. So... Are you saying he was there or not at all there, or he was just there a little bit? I guess he seemed to be dancing around a little bit. Was this gentleman at that site on the day those footings were poured? On the day that the footings were poured? It says here that on April 22nd, the buildings footings were poured and finished and that he was present. And on April 25th, the concrete walls were poured while the administrator was present at the site. He was only there at the footings, but I don't believe if Mr. Richter was there to testify that he was present for the walls. So the buildings footings and those are the ones that, under the permit, you need to make sure the elevation of that is at a proper level. That proper level is not indicated on the permit that's issued. The footings are below the ground, and they're a part of that first floor elevation, but then there's also the floor and then whatever else needed to be built up to meet that elevation. You know, maybe I'm missing something because the follow-up on the justices' questions, it seemed like, how do you know what you were supposed to do? The permit says to make sure you get it to the right level, but it doesn't say what it is. So you have to, you know, so the first stage is making sure you have the right elevation, right? I think it's important to think at a practical level what happens when the surveyor comes out You may not know, you may know the height, but if he comes out and says that, you know, this is the height of the site, then you need to adjust accordingly, and you come back and you say this is the elevation certificate that they received from that surveyor. Comes back to the county, they turn it in, and they can say, well, you may need to adjust based on these factors. The way the permit is written, it appears that you comply with this, and then you get the second permit, right? I think there's an evaluation, as you build a building, I'm sure. But really, that first permit doesn't tell you anything about the elevation. It says comply with this elevation, you'll get the second permit, but you don't know what the elevation is going to be, right? Potentially. I mean, on the face of the document, I would have to agree with that. That's what the document itself appears to say. You do this, and then you'll get the second permit, except it doesn't say you do what? The what is a question mark, I guess. But that's not the way the first permit reads. It doesn't read that way. It reads as if you're complying with the first permit, you got a chance to get a second permit. But that's not true, is it? I think that is true. I may not be following your line of reasoning. It's not true because you don't know what the proper elevation is. If you comply with the requirements for the elevation, but you don't know what the requirements are. It's sort of like a catch-22, isn't it? Well, I wouldn't say that far. I mean, if you didn't know what the requirements were, and you knew that there was a possibility of a fine, wouldn't you reasonably go back to the office and have it filled in? No, I'm talking about with the first permit, what it actually says. On its face. If you don't know what it is, how would you get it to that level, is what you're saying. I think that's a fair assessment of the document itself. You know what I mean by catch-22. Right. You can get it if you comply, but you can't comply. But you don't know how to comply. If we were to look at it in a vacuum, I would agree with that. But there's a very easy remedy for that, to revisit the office before you extend substantial resources and get a permit that contains the same thing, rather than excusing yourself from that requirement and continuing to substantially construct the building. If the pertinent officer was there when this was being done, would there be a sense that you're in compliance? You know, with Mr. Richter? Well, I don't necessarily know that that's the case, that just because an official is present and doesn't necessarily interrupt. I mean, we drove on the interstate today. There were several people that were going far faster than the speed limit, but just because they didn't get pulled over, it doesn't mean that they weren't in violation of the law. That's true. So, no, he may be present, he may have been present on, from my understanding, and it's not on the record, and so I don't want to overstep my bounds, Mr. Richter was present at a neighboring property. He was not on-site, on-site. Is there a legal responsibility on the county's part to be precise and definite when you're dealing with these kinds of permits so that people don't have a CIS 22? In fairness, should there be some kind of notice or some kind of knowledge that this is what you need to comply with? Well, I think if you look outside the document, again, and I understand where your concerns are arising from the document, but if you look outside the document, despite all the warnings that appear on its face and whatever there may be, if you look at the totality of the flood ordinance, it gives you the requirements. If you go and conduct a survey for the flood elevation certificate, that certificate should tell you where you are in relation to the flood, and then you know your elevation needs to be two feet above whatever base flood elevation is. There is a mechanism to get to that. It's not as if it's a mysterious number that cannot be calculated and that only Whiteside County could calculate that number for him. And I would surmise that had the Mirandais gone back to the office and said, hey, this is blank, our engineer doesn't know what to do with this, they would have gladly provided him with the number rather than substantially constructing their building on site. When did they know the number? When did the county know the number? The county didn't know the number until shortly before it issued the stop work order, a number of days, I believe, before. I think that might have actually been what ultimately prompted the stop work order was receiving the elevation certificate. Again, there were some issues with receiving the elevation certificate from the Mirandais, an issue that's voluntarily submitted. The county had to take affirmative steps to secure that from the engineer directly. Does the elevation change depending on the type of built structure that's going to be here? Yes, it can. If there are certain requirements for a building to be built within a floodplain, if the building is of a particular size and type, there are lesser requirements. For instance, the citation that you'll see a lot of in our briefs having to do with garage type structures, they have lesser requirements. They don't have to meet the elevation requirements as long as they fall under the square foot requirement and the fair market value requirement, which is $10,000 fair market value replacement cost and less than 600 square feet. Mr. Broca, I was pretty sure that I understood this when I walked in the courtroom this afternoon for this case, and now I'm getting confused. The only thing that was before the trial judge was a motion to dismiss. Is that correct? That's correct, Your Honor. That you filed? That we filed, correct. That the Whiteside County filed. And the requirements for the court were taking the allegations of the complaint as true. Did the complaint state a claim? Correct? It was a combined motion to dismiss both 2619 and 2615 and 2619. Correct. So the only thing that the court was authorized to do at that point was either to grant or deny your motion to dismiss? Correct, Your Honor. Okay. And your issues here on appeal, you're asking that we reverse that decision because the court did deny your motion to dismiss. And you're also asking that we negate everything else that the trial court did that day. Is that correct or not correct? I think most of the way correct, Your Honor. Essentially, they granted the ultimate relief, so we had a final judgment. And then we saw a reversal of that final judgment. In addition, the judge, Suess-Bonte, entered a permanent injunction without motion by the plaintiff. So then we'd also be here on the jurisdiction before the Supreme Court rule on injunctions. So really we're asking three things. It would be a fair breakdown that you reverse entry of judgment in favor of the plaintiff, that you dissolve the injunction that was entered in favor of the plaintiff. And that's because the trial court didn't have those issues before it? Correct, Your Honor. And then the remaining item is that we're here on the motion to dismiss. The county's position is that it was improperly denied. How far did the argument go on the substantive issues beyond the motion to dismiss before the trial judge? I think what you're getting at is, sorry if I'm wrong, is that we didn't have transcript for this argument. In other words, was there a participation by both sides? Yes, Your Honor. On the other substantive issues too before the trial judge? I don't want to speak for Mr. Mertens, but both parties were present. I argued in the lower court on behalf of Whiteside County, Mr. Richter, and Mr. Mertens argued on behalf of his clients. We touched on many of the same, if not all of the same, other than a few, where we've indicated in our brief that things were raised for the first time before the appellate court. But outside the things that are allegedly raised for the first time at the appellate court, the other matters going beyond the motion to dismiss were also touched on in part in the arguments, weren't they? Some, some. By both sides? By both sides. They both participated in the arguments? Correct. With the exception of equitable estoppel and the application of the Illinois Administrative Procedure Act. Those were not argued by both sides. Correct. Everything else was argued about? Correct. The substantive issues? Correct. Like the injunction? The injunction, I take that back, Your Honor, the injunction was not argued about. There was no motion for the injunction. That's why you said it was sua sponte by the judge. Correct. That was one aspect of my question. Okay. So that came sua sponte from the judge. Correct. But the other aspects of the substantive ruling by the judge, they were debated, discussed, and argued. Except for the new ones that were raised. The timeliness. The rule of estoppel, timeliness, and injunction. Those are the things that you're explaining. The timeliness was argued, to be clear. Okay. There was argument on the meetings before the presentation of the request for grantees at the Whitehead County Board meeting. There was arguments about the procedures through which the Mirandes went through to initiate permits and those things. The timeline was argued, and I believe that's a pretty fair assessment of what was done. So, I mean, to say again, so it was the injunction that was sua sponte. Correct. Equal rule of estoppel is being raised here for the first time. Correct. Well, Your Honors, I think I'd just like to note that for the sake of judicial autonomy, with the extent of things being briefed in the way that they were, I think you have the authority in ruling on these things as a matter of law before you to enter an order dismissing this as untimely. Again, ultimately what the declaratory judgment seeks to do is ask the court to grant the very same relief that the county board could have granted at the variance, to be able to build the building that they had for the size they had at the elevation that they had. That's exactly what the variance would have allowed. It should have pursued judicial review through one of the avenues that we've argued. Finally, though, if for some reason this court decides not to enter that order and decides to proceed with remand, the county would respectfully request that it be assigned to a new judge. So, in conclusion, for the reasons stated today and in the county's written submission to court, the court should vacate the judgment entered by the county, dissolve the injunction entered by the trial court, and reverse the trial court's order denying the county's motion to dismiss. Sure. During the course of the argument before the trial court, did the county concede the truth of the allegations in the complaint? No, I don't believe there's any affirmative concession in the argument. But for, I mean, the automatic concession, for the purposes of the motion, we have to accept as true those well-pleaded facts. But beyond that, I don't believe there was any concession. So as far as we know, the allegations of the complaint may all be false. We take them as true, but they may all be false. Correct, Your Honor. Okay. All right, thank you. I have one last question with regard to the request for a change of judge. Isn't that contrary to, you know, there are many times where judges, after the judge has ruled on some substantive issue, that judges, in the course of discussion and settlement, discuss all kinds of things in court, are ruling on some other motion, make indications of some things. But that's not usually a ground to get rid of the judge, is it, or have a change of judge? I think that's a fair assessment. Normally it's not, but I think given the procedural posture of this case, it is anything but normal. Given that this was here on a motion, it was before the court on a motion to dismiss, and some very final and determinative positions were revealed, sua sponte, without motion or argument, and no opportunity for the county to be able to respond to those, in particular that the county had violated an individual's civil rights, and that based on fairness and equitable estoppel, any defense essentially that the county could raise may be overcome by that position or the lens through which the judge is viewing. What happened in a motion for re-hearing or reconsideration? There was no motion for re-hearing or reconsideration. That's my point. There was no motion for re-hearing or reconsideration. And it was ultimately on the same principles, that if we went that route, we'd be conceding this argument later. How would that happen? That we'd now put it back before the judge. If I were to be here after a re-hearing or a petition… So if you raised it for the motion for re-hearing, if the judge was premature in ruling on some of these matters, how would that jeopardize the appeal? Premature in raising the issue, so to speak. And then I stood here before you and said, we need a new judge, and then could the justices then say back to me, well, if you needed a new judge, why did you put it before the judge a second time? The reason I'm asking that question is the obvious reason, is that normally the rules of procedure at the appellate level is to give, if there's any need for correction, it's to give the trial judge a chance to correct. Certainly. That's the whole tenor of most pre-appellate practice. And I suppose it could go either way, but I think you can see from the docket and the record that there were some timeliness issues with this and the need for finality and certainty for both parties. So we were working under a compressed time frame as well. Thank you. Mr. Murtis. May it please the Court and counsel, my name is James Murtis, and it's my honor to appear on behalf of Richard and Diana Morande, the plaintiffs' appellees in this matter. This appeal arises from the county's challenge to the trial court's decision granting declaratory judgment and injunctive relief when the determination of that ultimate relief was not then before the trial court. Now, we have conceded this very issue and agreed that the case should be reversed and remanded to the trial court for further proceedings on the Mirandes' request for declaratory judgment and injunctive relief. But the county wants more from you. The county requests that this court also reverse the trial court's denial of its motions to dismiss and remand the case to a different judge. In so doing, the county seeks extraordinary relief for which there is no basis in law. When the Mirandes conceded that declaratory judgment and injunctive relief were not before the trial court and that reversal on that issue was therefore warranted, the only issues properly left for this court's determination is actually the county's request for a remand assignment to a different trial judge by order of the court. Yet the county persists in its request for reversal of the trial court's denial of its motion to dismiss. The denial of the motion to dismiss, as this court has said repeatedly, is a well-settled proposition of law. It, of itself, is not a final and appealable order within the purview of Illinois Supreme Court Rule 307. Although the county asserts within its statement of jurisdiction that this court has jurisdiction pursuant to Supreme Court Rule 307A1, to the extent that the trial court's order granted an injunction against defendants, that authority does not extend to the determination of whether its motions to dismiss were properly denied. The appellate court, of course, has an independent duty to consider its jurisdiction before proceeding to the merits of the case. The trial court's denial of the motion to dismiss, of itself, is itself an interlocutory order which does not give jurisdiction to this court on appeal. Frankly, as I was preparing for arguments before you today, it occurred to me that it was unusual for me to be preparing arguments in counter to the county's request for reversal of a denial of the motion to dismiss. That's not something we do. If a motion to dismiss is granted, it's a final and appealable order. Then the parties come before you because of that final and appealable order. Here, Her Honor, Judge Koslarich, denied the county's motions to dismiss. We have conceded that ultimate relief should not have been granted. So when the county comes before you requesting reversal of a denial of a motion to dismiss, what the county is attempting to do is proceed with an appeal of an interlocutory nature. And 307A1, given the concession made by us, does not countenance that proposition. See, I have a question about that procedurally and jurisdictionally. Just because you say you might concede that there was a decision made by the trial judge on those matters, right? There was an injunction entered. Yes, sir. They appealed that injunction. Yes, they did. That would give us jurisdiction, would it not? Certainly. But we may have conceded the issue that they're I know you said it's okay, but that's what the judge did. When does it happen that that's overturned? Your concession or something from us? Certainly, ultimately, the authority to overturn a trial judge's decision only comes from this court. I've not been empowered to do that. So don't we have jurisdiction to say something about those other decisions? Of course you do. Of course you do. But I have conceded as a matter of record. Well, I understand what I'm thinking. From a matter of jurisdiction and procedurally, your concession doesn't magically transform those other rulings into a nullity. It requires some action from us. Absolutely, Justice Carter. And if I may expand upon that, it ultimately puts this court, I suppose, in light of your question, in a position of one of two things. Either the court could reject our concession and affirm the trial court's ruling, granting us the ultimate relief sought, which would certainly be acceptable to the Marandes as a form of relief. Or alternatively, this court could accept the concession, reverse and remand to the trial judge. But once the court does that, the court is without jurisdictional authority. This court is without jurisdictional authority to reverse the trial judge on a denial of a motion to dismiss because that is of an interlocutory nature. So I certainly accept the proposition. But, again, procedurally and jurisdictionally, if we had jurisdiction to resolve these other matters, we would have jurisdictions to decide the matter of the motion to dismiss as part of the case on appeal. Respectfully, I would argue that if the court accepts the concession that the ultimate relief of the declaratory judgment and injunctive relief were not before Judge Kosler at the time she decided those issues, if the court accepts that proposition and the concession made by us,  Respectfully, I would argue that it would be improper for this court to rule upon Judge Kosler's denial of the motions to dismiss because that would be an interlocutory appeal for which there's no authority. And this court has repeatedly said, and our Fifth District instructs us in MUND, that ultimately a denial of a motion to dismiss does not confer upon the appellate court jurisdiction. It's the granting of that motion to dismiss, which constitutes a final and appealable order, which then There's no doubt about that, but this comes in a different light. Well, it's certainly unique, indeed. I concede that it's unique that the trial judge exceeded that which was before her at the time. But, again, as I said, the Mirandes would be certainly happy for this court to grant an affirmation. But as an officer of the court, I did not feel comfortable coming before this body and arguing that the injunctive relief and declaratory judgment issues were properly before the trial court when they were decided. Were you at the trial level? I was at the trial level, yes. And so a lot of these things were debated, not the injunction. That came at the end of the day with the ruling from the judge, right? Yes. Okay. And not this new, we'll stop the thing that comes on appeal, right? Well, that's correct. Ultimately, in ruling on the ultimate relief, I concede that Judge Koslarich exceeded that which was before her. Certainly, these things were argued, as Your Honor has correctly noted, in colloquy with my opposing counsel. These discussions were had at the trial court level, but I have conceded at all times that those discussions were had within the construct of a hearing on the 2615 and 2619 motions dismissed. I understand that, but substantively, these other matters were argued before the trial court. Yes, but to the extent they were argued, they must necessarily have been argued in favor of my clients. And I say that because of the well-settled proposition of law that in a hearing on a Rule 2619 motion to dismiss, all well-pled facts are to be accepted as true. So there really is, and frankly, this brings me to my next point. When the county makes arguments with respect to what the flood elevation was and what the flood elevation of the footings happens to be, the county is making an argument for which there's absolutely no basis whatsoever in this record. For purposes of a ruling on the motion to dismiss, if the court is going to review Judge Koslarich's ruling on the motion to dismiss, the court must accept as true all well-pled facts. Those well-pled facts include, but are not limited to, the proposition that Stu Richter, on behalf of the county, issued a permit and approved that the footings could be poured and the construction could begin in accordance with the flood elevation that was not specified. That blank was left in the document. Now, I know that Mr. Brokaw gave an example on his way here today. Some cars were speeding. That they were not stopped does not mean they weren't speeding. But I think, respectfully, my opposing counsel overlooks another point. Not only was this flood permit issued by the county to the Muromans, not only did they rely specifically on that permit in commencing the construction, not only was Mr. Richter present as they were pouring the footings and said nothing, but it is alleged within our complaint and must be accepted as true by the trial court that when Mr. Richter was asked about the pouring of the footings, he said it was fine with him. So the better analogy than that which was provided to this court by my opposing counsel would be cars are going by him speeding and there's a state police officer on the side of the road saying, please, speed, go right ahead. Because that's ultimately what took place here, and that's the far better analogy. The trial court in this case properly denied the county's 2619 motion to dismiss, which claimed untimely administrative review. I want to address that briefly, even though I believe that ultimately this court, if it accepts the concession, doesn't have jurisdiction to decide this. It should simply be reversed and remanded, and we should start in light of the fact that the judge has already denied the motions, and that's where we commence the case forward. Not to press on about this procedure of jurisdiction, how do we do anything if we don't have jurisdiction? Well, if this court determines that the case should be reversed and remanded, then that's respectfully, I argue, as far as this court should or can go. This court would not have jurisdiction then to reverse a motion, a denial of a motion to dismiss, given that that is interlocutory. So, as I said, really I think just – What's the jurisdiction to reverse the other two things? What's that? What's the jurisdiction to reverse the injunction? Well, I think this court absolutely has the jurisdiction with which to reverse the declaratory relief and the injunction, but I think this court is left with a choice of two scenarios. One is to accept the concession, reverse and remand on the issue of the ultimate relief that was not before the trial judge at the time, or alternatively, accept the concession, reverse and remand. But once it does that, I don't think the county can strap on to its position. Well, as long as we're here, let's present this as though it were interlocutory. Let's ignore Rule 307A. Let's simply proceed as though it's an interlocutory appeal and find out what you think about Judge Kozlovich's denial of the motions to dismiss. Respectfully, Justice Carter, I argue to you that there is no authority for this court to do that if the court ultimately determines on the issue of ultimate relief, reverse and remand is appropriate. But the county argues that the Mirandas were untimely in their filing of the request for administrative review. The county wholly ignores all of its procedures associated with administrative review and then asks this court to apply the Administrative Review Act. I ask rhetorically this question. If, indeed, this was a case of an untimely request for administrative review, then where might we find this administrative record that is required as a matter of law? Where might we find this administrative record which, as a matter of law, requires specific factual findings, specific determinations made by the zoning commission with respect to whether or not the building is in conformity? There is no administrative record because the county wholly ignored its procedures and now at the appellate level attempts to avail itself of the remedies that arise from those procedures that it wholly ignored. Because the Administrative Review Act does not apply and because the Mirandas are not seeking judicial review of an administrative decision, the trial court properly denied the 2619 motion to dismiss. In return to this issue of the 2615 motion to dismiss, and again I respectfully argue that this court need not reach that issue if the court reverses and remands on the issue of Judge Cosler granting ultimate relief when it wasn't before. If the court chooses to reach that issue, then certainly the complaint had well-planned factual allegations which established all elements in support of a request for a declaratory judgment. The county argued in its brief, in this case of Brant Construction v. Ludlow, the county argued that Brant was factually distinguishable because it involved an employer's request for a retrospective determination of liability for failure to pay a prevailing wage. In Brant, as it is here, the plaintiffs sought a declaration of rights only after receiving notice of a governmental claim of non-compliance. Here, the stop work order issued by the county is the logical equivalent of the non-prevailing wage notice served upon the employer in Brant. And I couldn't help but notice when my opposing counsel was asked, well, when was the determination made of the flood elevation? His answer was a few days before the stop work order was entered. I see the glass a little bit differently. It was issued a few months after construction was commenced based on the county's permit that was issued to it. The last issue, and I think it's a dangerous one for the county to request, is whether upon remand the trial judge should be removed for deciding a case contrary to the county's expectations of her. The trial judge is presumed to be impartial, and the burden of overcoming the presumption rests on the party making the charge of prejudice. The party making the charge of prejudice must present evidence of prejudicial trial conduct and evidence of the judge's personal bias. Here, there is absolutely no evidence of prejudicial trial conduct on the part of the judge. In fact, in its brief, the county concedes that Judge Koslick did not demonstrate personal bias or prejudice directly against the county or its counsel. There endeth the analysis. There endeth the discussion. If there is no evidence of actual bias on the part of the trial judge, that this court might reverse the trial judge does not warrant remand to a different trial judge. Indeed, the request for remand to a different trial judge, when it accompanies the request for reversal of that trial judge, I would respectfully argue, connotes a substantial lack of confidence in our justice system for which the law provides no confidence. For these reasons, we concede that this court should reverse the trial court's grant of declaratory injunctive relief and remand to the same trial judge for further proceedings. We request that this court consequentially decline to rule upon the trial court's denial of the county's motions to dismiss for want of appellate jurisdiction under Rule 307, or alternatively, if this court is inclined to rule on those issues, that this court affirm the denial of both the 2615 and 2619 motions to dismiss. Thank you. Thank you, Mr. Rogers. Mr. Brokaw? Thank you, Your Honors. I think, as Justice Carter correctly pointed out, there are some issues with the jurisdictional arguments that the Mirandes present today. Most importantly is that this argument appears nowhere in the briefs. It's brought up for the first time in a law argument. It's not been briefed. It's not been responded to by the county. And it flies in the face of the principle of judicial economy. Why exert additional resources when the case is before you? I think you have jurisdiction to take up the case, and you can resolve the case here without further action. Although, on the other hand, the Supreme Court tells us that we always have to, ourselves, to respond to it, look at jurisdiction. Not to do anything when we don't have jurisdiction. That's a directive from the Supreme Court. The Supreme Court does make that directive, but the concession isn't what defeats that, and I think you have to consider the case as a whole. And in doing so, much of your efforts would be wasted if you had to, if you could reach that conclusion, had a sufficient record before you, and could analyze the law, and make that decision as a matter of law, and chose not to. The Mirandes talk a lot about the timeliness and the loss in the absence of a record. What's ironic about all of that is that the Mirandes, had they timely filed their suit, far in advance of the seven months between the decision by the board and their complaint for declaratory judgment, they could have raised the issue of the absence of a record. All the case cited to by the Mirandes, in fact, had plaintiffs who timely filed for judicial review. And when they raised the issue of the absence of the record, the case was remanded. Here, the absence of a record is completely moot. They missed the time they slept on their rights. And so now to go back and create a record after they've fallen asleep on their rights does not track. Additionally, they've argued that the county has ignored its procedures, but throughout its briefing, both below and in this court, the Mirandes have asserted that Chapter 19 contains all the procedures for which the county should comply. Or that completely and totally ignores Chapter 11 of their ordinances, which has its own specific procedures, even for the variance, for the decision on the variance. Even more so, the very provisions which the Mirandes cite to within Chapter 19 have self-limiting provisions that they only apply to this chapter. Specifically? I would argue no. There's an additional step in there. They sought out the variance, but now they're denying it. They got the first permit, stop work order, and then they applied for the variance. But that variance, if you look at it, they concede. There's talk about the elevation level. The building under construction is apparently 3.1 feet below the base flood elevation, and a variance is requested to allow the construction of the building to be completed at the present elevation. They now contend they didn't need the variance at all. Even though they went through all of those procedures and admitted those things before the county board and in their letter to the county, they now say that we didn't, which is wholly inconsistent with a party who claims to have exerted significant due diligence in securing all these permits and paying fees and things. Counsel has one more. Counsel also points out that the county concedes that the judge had no bias, and he's correct partially. In our brief, we admit that the judge came to the case with no bias, but I think it's very clear from the order and the findings that in adopting these arguments to respond to, there is a different lens here that would cause the county concern about getting, receiving a fair trial before that judgment. Thank you. Thank you, Mr. Murth. Thank you, Mr. Murth. Thank you both for your arguments here today. This matter will be taken under advisement, and a written decision will be issued to you as soon as possible. And right now, we'll stay in the brief recess for a panel discussion.